## TIMMONS v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1898.)

### No. 558.

1. **POSTAL LAWS—NONMAILABLE MATTER.**
    Rev. St. § 3893, as amended September 26, 1888 (25 Stat. 496), being construed in the light of the evil to be suppressed, makes nonmailable every obscene, lewd, or lascivious book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character, as being similar to those specifically named, and like those in being obscene, lewd, or lascivious in character.

2. **SAME—SUFFICIENCY OF INDICTMENT.**
    Under this statute, an indictment for depositing in the mails a letter described as "obscene, lewd, and lascivious" is sufficient, without adding, "and of an indecent character."

In Error to the District Court of the United States for the Southern District of Ohio.

Plaintiff in error was indicted under section 3893, Rev. St., as amended by Act Sept. 26, 1888 (1 Supp. p. 621; 25 Stat. 496), providing: "Every obscene, lewd or lascivious book or pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character * * * whether sealed as first-class matter or not, are hereby declared to be non-mailable matter, and shall not be conveyed in the mails, nor delivered from any post-office, nor by any letter-carrier; and any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be non-mailable matter * * * shall for each and every offense," etc.

The first count in the indictment is as follows: "First Count. The grand jurors of the United States of America, duly impaneled, sworn, and charged to inquire within and for the Western division of said district, upon their oaths and affirmations present that E. J. Timmons, whose first name is to the grand jurors unknown, alias Harry C. Morton, on, to wit, the nineteenth day of April, in the year of our Lord one thousand eight hundred and ninety-seven, in the county of Ham-

ilton, in the state of Ohio, in the circuit and Western division of the district aforesaid, and within the jurisdiction of this court, did then and there unlawfully and knowingly deposit, and caused to be deposited, in a post office of the United States, to wit, the post office at Cincinnati, Ohio, for mailing and delivery, certain nonmailable matter, to wit, a letter inclosed in an envelope, which said letter was obscene, lewd, and lascivious, and is unfit to be set forth in this instrument, and to be spread upon the records of this honorable court, said envelope containing said letter, as aforesaid, being then and there directed to Miss Mamie, 1081 Mound street, city; he, the said E. J. Timmons, first name unknown, alias Harry C. Morton, then and there well knowing the said letter to be obscene, lewd, and lascivious, as aforesaid, and the depositing and causing to be deposited of the same by E. J. Timmons, alias Harry C. Morton, as aforesaid, being then and there contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America." The second count was like the first, except in the date on which the letter is stated to have been deposited in the post office. The sufficiency of the indictment was raised—first, by motion to quash; second, by demurrer; and, third, by motion in arrest of judgment. The omission in the indictment of the words contained in the statute, "of an indecent character," is the ground of the objection taken to the indictment. The motions and demurrer were overruled by the court, and exception duly taken to the ruling. Thereupon the defendant entered a plea of nolo contendere,—in effect, a plea of guilty,—and was sentenced to imprisonment in jail for a period of six months, and to pay the costs of the prosecution, and has sued out this writ of error to review the judgment.

Francis B. James, for plaintiff in error.

Before LURTON, Circuit Judge, and SEVERENS and CLARK, District Judges.

CLARK, District Judge, after stating the case, delivered the opinion of the court.

The contention of counsel for plaintiff in error is that the charge in the indictment that the letter was "obscene, lewd, and lascivious" is insufficient, without adding the words, "and of an indecent character." It is argued that it requires the addition of these to make the letter one of the character declared to be nonmailable by the statute, and so to constitute the statutory offense. It is said the word "obscene" has a defined meaning, which is not the same as "indecency." In just what respect there is a difference, for any practical purpose or in ordinary usage, has not been made clear, and we are not impressed with the force of this argument. The word "obscene" is defined in the Century Dictionary as "offensive to modesty and decency, impure, unchaste, indecent, lewd; as, obscene actions or language; obscene picture. Obscene publication, in law: Any impure or indecent publication tending to corrupt the mind and to subvert the respect for decency and morality." In the Standard Dictionary the definition is: "Offensive to chastity, delicacy, or decency; expressing or presenting to the mind or view something that decency, delicacy, and purity forbid to be exposed." And this is exactly the definition found in Webster. In Black's Law Dictionary "obscene" is defined as "lewd, impure, indecent." The word cannot be said to be a technical term of the law, and is not susceptible of exact definition in its juridical uses. "Indecency is an act against good behavior and just delicacy." Bouv. Law Dict.; Com. v. Sharpless, 2 Serg. & R. 91. The well-settled purpose of this enactment and its grammatical arrangement are of more weight, however, than general or abstract

definitions. The statute has been twice amended, enlarging its application. Having regard to the evil to be suppressed, and looking to the whole of the section, the intention was to render nonmailable every obscene, lewd, or lascivious book, pamphlet. picture, paper, letter, writing, print, or other publication of an indecent character, as being similar to those specifically named, and like those in being obscene, lewd, or lascivious in character. Such, we think, is the proper construction.

It had been found necessary by congress to amend and enlarge the statute so as to extend its application to new forms of objectionable matter going through the mails of the United States, and obscene, lewd, and lascivious letters were rendered nonmailable by this enlarged application. Congress, no doubt having in mind the rule of strict construction applicable to such a statute, did not desire the enactment restricted to the publications specifically enumerated, but intended by the words, "or other publication of an indecent character," to enlarge its application to any publication which could properly be characterized as obscene, lewd, or lascivious, so as to keep all offensive matters of that kind out of the mails of the United States. In this view it was not necessary for the indictment, after charging that the letter was obscene, lewd, and lascivious, to add the words, "of an indecent character." The use of such terms would add nothing to the meaning already conveyed, and would add no different meaning. The indictment charges a complete offense under the statute. It is to be borne in mind that the chief purpose of an indictment, at common law or under statutes, is to inform the accused of the crime charged with such reasonable certainty that he can make his defense and protect himself after judgment against another prosecution for the same offense.

In Rosen v. U. S., 161 U. S. 29, 16 Sup. Ct. 434, Mr. Justice Harlan, speaking for the court, said:

"The constitutional right of a defendant to be informed of the nature and cause of the accusation against him entitles him to insist, at the outset, by demurrer or by motion to quash, and, after verdict, by motion in arrest of judgment, that the indictment shall apprise him of the crime charged with such reasonable certainty that he can make his defense and protect himself after judgment against another prosecution for the same offense; and this right is not infringed by the omission from the indictment of indecent and obscene matter, alleged as not proper to be spread upon the records of the court, provided the crime charged, however general the language used, is yet so described as reasonably to inform the accused of the nature of the charge sought to be established against him; and in such case the accused may apply to the court before the trial is entered upon for a bill of particulars, showing what parts of the paper would be relied on by the prosecution as being obscene, lewd, and lascivious, which motion will be granted or refused, as the court, in the exercise of a sound legal discretion, may find necessary to the ends of justice."

In the indictment now in question, the date when the letter was deposited in the post office, the character of the letter, the person addressed as "Miss Mamie," with the city, street, and house number, and the particular post office, are all given. The letter was thus distinctly identified with certainty, to every reasonable intent and purpose.

The indictment alleges that "the letter was unfit to be spread upon the records of the court," and, if the accused wished to be fur-

ther informed, it was open to him to apply for a bill of particulars, which the court, in the exercise of a sound legal discretion, might have granted. No person, however, of ordinary intelligence, could have failed to understand the specific offense here charged. The indictment in Andrews v. U. S., 162 U. S. 420, 16 Sup. Ct. 798, was exactly similar to the one in question, the letter being described as obscene, lewd, and lascivious; the charge being that the accused had, on the date named, deposited in the United States post office, at Los Angeles, for delivery, "a certain obscene, lewd, and lascivious letter," addressed to "Mrs. Susan Budlong, Box 661, Los Angeles, Cal." The indictment was demurred to on the ground that the facts stated therein did not constitute an offense against the laws of the United States. The demurrer having been overruled, the defendant was convicted, and the judgment of the court below was affirmed. The court did not, in the opinion, discuss the question here involved, although it is said that there were other assignments of error, which the court did not think merited special notice. Moreover, this question must be regarded as settled by the case of Price v. U. S., 165 U. S. 311, 17 Sup. Ct. 366. The court, by Mr. Justice Peckham, stating the case, and the court's view of the questions raised, said:

"The indictment contained five counts, the first, second, and fourth of which charged the defendant with giving information as to where obscene matter might be obtained, and the third and fifth charged him with depositing such matter in the mails. A motion was made before trial to quash all the counts of the indictment, and it was granted as to the first, second, and fourth, and denied as to the third and fifth, counts. The defendant then demurred to the indictment on the ground that it did not charge that the matter was nonmailable, nor did it charge that it was obscene or lewd or lascivious or of an indecent character. The demurrer was overruled, and the parties went to trial. After his conviction of the offense stated in the third and fifth counts, the defendant moved in arrest of judgment, on the ground, among other things, that it was nowhere in either of these counts alleged that the book or pamphlets, or either of them, was in fact obscene, lewd, or lascivious, or of an indecent character, and that they were nonmailable matter. The motion was overruled, and the defendant sentenced, as above stated. There are but two grounds upon which the sufficiency of the indictment is attacked; the first being that there is no direct allegation in either count that the defendant knew that the book that he deposited in the mail was obscene or lewd or lascivious, the only charge being, as is claimed, that he knowingly deposited a book, the contents of which were, as a matter of fact, lewd and lascivious; the point being the alleged absence of any charge that he knowingly deposited a book which in fact was obscene, lascivious, and lewd, and which he knew was of that character. The further ground is taken that there is in truth no allegation that the matter was obscene or lewd or lascivious, but the indictment contains nothing more than a mere expression of the opinion of the pleader that it was so obscene as to be unfit for repetition in the indictment. We think there is no force in either contention. The plain meaning of the indictment is that the defendant deposited in the mails a book which he knew to be obscene, and that in truth it was obscene, and so much so as to render it improper and offensive to place the same upon the public record of the court. The indictment is substantially like the one which we held to be sufficient in Rosen's Case, 161 U. S. 29, 16 Sup. Ct. 434. The indictment in that case, as it is set forth in the report, states that the accused, on the 24th day of April, 1893, within the Southern district of New York, 'did unlawfully, willfully, and knowingly deposit and cause to be deposited in the post office of the city of New York, for mailing and delivery by the post-office establishment of the United States, a certain obscene, lewd, and lascivious paper, which said paper then and there, on the first page thereof, was entitled, "Tenderloin Number, Broadway," and on the same page were printed the words and figures following,—that is to say:

"Volume II, Number 27; Trade-Mark, 1892; by Lew Rosen: New York, Saturday, April 15, 1893. Ten cents a copy; $4 a year in advance;" and thereupon, on the same page, is a picture of a cab, horse, driver, and the figure of a female, together (underneath the said picture), with the word "Tenderloineuse," and the said paper consists of twelve pages, minute descriptions of which, with the pictures therein and thereon, would be offensive to the court, and improper to spread upon the records of the court, because of their obscene, lewd, and indecent matters; and the said paper on the said 24th day of April, in the year one thousand, eight hundred and ninety-three, was inclosed in a wrapper and addressed as follows,—that is to say: "Mr. Geo. Edwards, P. O. Box 510, Summit, N. J.,"—against the peace of the United States, and their dignity, and contrary to the statute of the United States in such cases made and provided.'" "A distinction," the court continued, "is attempted to be taken between the Rosen Case and the one at bar, for the reason, as is stated, that the indictment in the former case contained a direct charge that the defendant did deposit in the post office a certain obscene, lewd, and lascivious paper, whereas in this case no such charge is made, but only that the defendant knowingly deposited, etc., a printed book and pamphlet, 'the character of which is so obscene, lewd, and lascivious that said book would be offensive if set forth in full in this indictment.' In other words, it is said that, when an indictment contains a charge that a book 'is so obscene, lewd, and lascivious' that it would be offensive to set it forth in full in the indictment, it is not thereby charged that the book was in fact obscene, lewd, or lascivious. It takes stronger eyes than we possess to discover any real and material difference in the meaning of the two expressions. The plain English of an allegation that a book is so obscene and indecent as to be offensive if set forth in full in an indictment, and placed upon the records of the court, is that the book is obscene in fact and to the degree described. No one denies that there are degrees of obscenity, any more than that two and two make four; but, when a book is stated to be so obscene that it would be offensive if set forth in full in an indictment, such allegation imports a sufficient degree of obscenity to render the production nonmailable and obscene under the statute. This indictment is sufficient, because it does, in fact, contain a charge that the book was obscene, to the knowledge of the defendant, who knowingly and willfully, with such knowledge, deposited it in the mail, and thus violated the statute. No one, on reading the third and fifth counts of the indictment, could come to any other conclusion in regard to their meaning, and, when this is the case, an indictment is good enough."

Obviously, the words "obscene" and "of an indecent character" are treated in this opinion as convertible expressions, equivalent in meaning; and certainly an indictment charging that a paper or letter is obscene, lewd, or lascivious, and unfit to be spread upon the records of the court, was treated as good.

Without extending the discussion further, it is sufficient to say that we conclude there was no error in the ruling and judgment of the court. Affirmed.